IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Maryland)

| | | |
|---|---|---|
| Robin Ann Burkhart | * | |
| Plaintiff | * | |
| v. | * | |
| Officer Ryan Dickel, et al. | * | |
| Defendants | * | Civil Action No.:  CCB-12-CV-3320 |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MOTION IN LIMINE TO EXCLUDE THE EXPERT AND/OR OPINION
TESTIMONY OF DAVID RICHARD FOWLER, M.D.**

COMES NOW Plaintiff Robin Ann Burkhart, by and through her attorneys, Anton L. Iamele and IAMELE & IAMELE, LLP who hereby requests that this Honorable Court preclude the Dr. David Richard Fowler from offering unsubstantiated and irrelevant conclusions as expert testimony during the course of trial in this matter. Dr. Fowler, like defendant's other named experts in this case, was faced with the conundrum of explaining the cause of Plaintiff Robin Burkhart's acute traumatic injuries in the context of the defendant's assertions that they did not manipulate Plaintiff Burkhart's or witness any event that may have caused the injuries.  In effort to bridge the causation gap he proposes to offer a series of unsupported conclusions.

1.   Dr. Fowler intends to offer an opinion that Plaintiff Burkhart was injured when she was placed on her knees to be handcuffed. However, there is no basis in substantive evidence for this factual scenario claimed by Dr. Fowler. The Defendant Officers have testified that Plaintiff Burkhart was guided to the ground and placed on her torso without any contact to her knees. Plaintiff Burkhart never claimed that she was placed on her knees as part of a handcuffing procedure. No other witness in this case has suggested Plaintiff Burkhart was injured when she was placed on her knees to be handcuffed. Dr. Fowler accordingly admitted during the course of his deposition that opinion should be withdrawn as it was factually unsupported.

2.      Dr. Fowler intends to offer an opinion that Plaintiff Burkhart suffered from "severe" osteoporosis. This opinion, which is generally contrary to the record evidence in this case, is not founded on any forensic analysis or data. Dr. Fowler has conceded that he is simply reiterating an opinion that may have been provided to him either by Dr. Barry Daly of Mr. James Ruckle, although he cannot provide any insight as to how and when he received the information. This opinion has also been offered without factual support.

3.      Dr. Fowler intends to offer an opinion that Plaintiff Burkhart's injuries are not consistent with a twisting mechanism that she described. Dr. Fowler acknowledged during deposition, however, that he did not conduct any forensic analysis of Plaintiff Burkhart's account of the subject happening.  He also could not offer any explanation for injuries based on a consideration of the discovery record in this case. Ultimately, he cannot offer any testimony that might assist the jury in deciding this case.

Plaintiff Burkhart hereby  incorporates her Motions in Limine concerning Dr. Barry Daly and Dr. Stephen Belkoff as if fully restated herein, and states further:

## I.      RELEVANT BACKGROUND

Dr. Fowler is a board-certified forensic pathologist. He was not, however, retained by the defendant officers for purposes of a "forensic investigation" in this case, but rather to offer what he described as "biomechanical interpretation of the injuries within the context of the situation." (Attached Exhibit No. 3, June 11, 2015 Deposition of Dr. David Richard Fowler, p. 54, lines 1-9) The process for such an interpretation was described during Dr. Fowler's deposition:

Q: Recognizing that this is not a complete forensic investigation, in the context of your work in this case— which is a biomechanical interpretation of the circumstances and the ultimate outcome— can you tell me what your process is how you went about making that interpretation?

A: Firstly, ascertaining the injuries. So reviewing the medical records, the radiology reports, the surgical procedure notes, everything that's in the medical records, to make a determination as to the nature of the type of injury. That would be the first part of the process.

Once you have an idea of what that is, correlating that with the basic medical literature or knowledge base that I have with regard to how injuries typically occur and where we would expect

> to see injuries of this particular nature, and then going through the
> actual statements of various individuals to see if I can correlate
> what I would expect is a mechanism with any statements made.

(Attached Exhibit No. 3, June 11, 2015 Deposition of Dr. David Richard Fowler, p. 54, lines 10-

p. 55 line 8) When conducting such interpretive work, Dr. Fowler does not conduct any

"independent investigation" and leaves it to the "discretion of the [retaining] attorney to provide

[him] with the materials they believe are significant." (Attached Exhibit No. 3, June 11, 2015

Deposition of Dr. David Richard Fowler, p. 52, lines 5 -16.)

  In a report dated September 20, 2013, Dr. Fowler identified the records that he reviewed

in the instant case to include the Deposition of Robin Burkhart, a single "Police Report"[1] and

medical records corresponding Plaintiff Burkhart's care (without consideration of any

radiographic film).  (Attached Exhibit No. 1, September 20, 2013 Report of Dr. David R.

Fowler). Based upon his review of those materials he noted that the "medical records indicate a

left tibial plateau fracture, left fibula head fracture and damage to the left popliteal artery and

vein. " (Id.) He suggested that: "the twisting and pulling and the popping sound at the time as

described by Ms. Burkhart are not consistent with the fracture seen in this case." (Id.)  He did not

address any other motion described by Plaintiff Burkhart and did not set forth any additional

opinions.

  Dr. Fowler expanded his expert opinions in a report dated May 13, 2015. (Attached

Exhibit No. 2, May 13, 2015 Report of Dr. David R. Fowler). Although he had not  reviewed or

considered any additional materials, beyond those mentioned in his initial report, he managed to

---

[1] During the course of his deposition, Dr. Fowler identified that report that he looked at as the Statement of Probable Cause authored by Defendant Officer Dickel. (Attached Exhibit No. 3, June 11, 2015 Deposition of Dr. David Richard Fowler, p. 25, lines 10-14.) He later testified that he had not had occasion to examine any Use of Force Report regarding the subject incident. (Id.,  53, lines 5-12)

supplement his interpretation.  (Attached Exhibit No. 3, Deposition of Dr. David Richard Fowler

dated June 11, 2015, p. 50, lines 3-13) He asserted:

> In light of the osteoporotic bone changes in Ms. Burkhart's knee, a
> review of the supplied statements and the injury pattern, the
> circumstances consistent with this injury seen in this case, are a
> backward directed compressive force. The statements indicate that
> Ms. Burkhart was placed on her knees as part of the restraint
> process…. None of the other described motions (pulling, twisting)
> are consistent with the observed compressive injury.
>
> Ms. Burkhart's osteoporosis places her at risk of this type of injury
> as would normally be seen in an older age group where these
> changes are more common.

(Id.)

None of Dr. Fowler's opinions were formed with consideration of the deposition

testimony of Defendant Officer Dickel, Defendant Officer Vlach, or Officer Barber, because

those materials had not been provided to him at any point before he rendered his opinions.

(Attached Exhibit No. 3, June 11, 2015 Deposition of Dr. David Richard Fowler, p. 25, lines 10-

14.) He also had not reviewed the deposition testimony of any witnesses to the subject

occurrence. (Id., p. 51, line 15 – p. 52, line 12)  Moreover, he never had occasion to review the

Use of Force Reports that the defendant officers completed regarding the subject incident. (Id.,

53, lines 5-12)

Despite the fact that he had not had occasion to review the majority of the materials

regarding the circumstances of the subject occurrence, he offered his supplemental opinion as an

explanation of  "backward motion compressive type situation" that "could potentially cause" the

injuries.  (Id.,  p. 110, line 16 – p. 111, lines 17) Dr. Fowler explained:

> Mr. Ruckle asked me to, based on our conversation during the
> preparation for the other deposition. I proposed a plausible—what I
> thought was a plausible and/or potential mechanism by which the
> injury may have occurred, based on the statements of the

individuals in my knowledge of the nature of the injury and the type of osteoporosis and bone deficits that Ms. Burkhart had.

So, I put that forward to Mr. Ruckle, and he, at some stage after that asked me to put it into an addendum.

(Attached Exhibit No. 3, June 11, 2015 Deposition of Dr. David Richard Fowler, p. 49, lines 5-16)

When Dr. Fowler was later provided with the deposition testimony of the defendant officers[2] and information from the Use of Force reports during the course of his deposition, he was compelled to acknowledge that there was no evidence of Plaintiff Burkhart having been placed on her knees on July 23, 2011. (Id., p. 113, lines 9-12). This was examined further:

Q: If we are to, for the moment, accept Officer Dickel's testimony as correct in this particular case, you would agree with me, sir, that your theory about Robin Burkhart being injured when she was taken to her knees would not be applicable to this case? It would not be appropriate?

MR. RUCKLE: Objection.

A: If you can exclude the knees striking the ground, then that particular scenario, as stated in my second report, the addendum, would be inapplicable, yes.

Q: Well, I'm not asking you to do it based on conjecture.

I'm asking you, based on Officer Dickel's testimony that he provided in this particular case at deposition, if we accept Officer Dickel's testimony in this case as being truthfully and factually correct, is your theory about the injury applicable to this case?

A: No, it's not.

Q. If you are to consider Officer Dickel's testimony in conjunction with Robin Burkhart's deposition testimony in this case, can you come up with a scenario under which she was injured?

A: No.

---

[2] See Attached Exhibit No. 3, Deposition of Dr. Fowler, p. 125-130, in which Dr. Fowler read the deposition testimony of Defendant Offcer Dickel.

(Attached Exhibit No. 3, Deposition of Dr. Fowler, p. 128, line 22 - p. 130,  lines 1-2) He

accordingly admitted that he had "proposed [the potential mechanism explanation] without

knowledge of the circumstances or the intimate knowledge of the circumstances as we've just

gone through." (Attached Exhibit No.3, Deposition of Dr. Fowler, p. 110, line 9 – p. 111, line 7).

Dr. Fowler ultimately agreed at deposition that he would be withdrawing his

supplemental opinion. (Attached Exhibit No.3, Deposition of Dr. Fowler, p. 110, lines 2-7; – p.

111, line 7) This was verified as follows:

> Q: And officer Vlach said the exact same thing, and [he and
> Defendant Dickel] both testified that she never hit her knees. And
> Robin Burkhart testifies that she was never put on her knees as part
> of the cuffing process.
>
> Can we agree that your opinion here, that she was injured
> while being placed on her knees as part of the restraining process,
> does not fit this case? It's not part of this case?
>
> A: You're correct. There is no evidence to support it
>
> Q: Are you prepared to withdraw that opinion?
>
> A: If there's no evidence to support it, yes.
>
> Q: And can you agree that you've withdrawn it for purposes of this
> case?
>
> A: Presumably, yes, because there is no evidence to support it.

(Attached Exhibit No.3, Deposition of Dr. Fowler, p. 158, lines 4 - 19)

## II.   STANDARD

Fed. R. Evid. 702 states that:

> A witness who is qualified as an expert by knowledge, skill,
> experience, training, or education may testify in the form of an
> opinion or otherwise if:
> > (a) the expert's scientific, technical, or other specialized
> > knowledge will help the trier of fact to understand the
> > evidence or to determine a fact in issue;
> > (b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

"The rule was 'intended to liberalize the introduction of relevant expert evidence.'" *Young v. Swiney*, 23 F. Supp.3d 596, 610 (4th Cir. 2014) (quoting *Westberry v. Grislaved Gummi AB*, 178 F.3d 257, 261 (4th Circ. 1999)). "'The party seeking admission of the expert testimony bears the burden of establishing admissibility by a preponderance of the evidence.'" *Young*, 23 F. Supp.3d at 610 (quoting *Fireman's Fund Ins. Co. v. Tecumseh Prods. Co.*, 767 F. Supp.2d 549, 553 (D.Md. 2011). Expert testimony is admissible under Rule 702 if it concerns (1) scientific, technical, or other specialized knowledge that (2) will aid the jury or other trier of fact to understand or resolve a fact at issue. *See Daubert v. Merrell Dow Pharms,, Inc.*, 509 U.S. 579, 592 (1993). "

"[T]he Rules of Evidence – especially Rule 702 – do assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 at 597. For purposes of determining the admissibility of expert testimony, this Court must first conduct an "examination of whether the reasoning or methodology underlying the expert's proffered opinion is reliable -- that is, whether it is supported by adequate validation to render it trustworthy." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 260 (4th Cir.1999) (citing *Daubert v. Merrell Dow Pharms,, Inc.*, 509 U.S. 579, 590 & n.9). "[W]here such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question…the trial judge must determine whether the testimony has a 'reliable basis in the knowledge and experience of [the relevant] discipline." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993)).

Although it is not necessary for a proponent of expert testimony to demonstrate that an opinion is "irrefutable or certainly correct", the party seeking admission must show that it is reliable. *Young v. Swiney*, 23 F. Supp.3d at 611 (quoting *United States v. Moreland*, 437 F.3d 424, 431 (4th Circ. 2006) and citing *Oddi v. Ford Motor Company*, 234 F.3d 136, 145 (3rd Cir. 2000)). The Supreme Court explained that expert scientific testimony must be grounded 'in the methods and procedures of science,' and it must be something more than subjective belief or unsupported opinions." *Young*, 23 F. Supp.3d at 610 (quoting *Daubert,* 509 U.S. at 591*).* "Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert." *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997). "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Id.* (citing *Turpin v. Merrell Dow Pharmaceuticals, Inc.*, 959 F.2d 1349, 1360 (CA6), cert. denied, 506 U.S. 826 (1992)).

Ultimately, this Court must exclude expert testimony that is "based on 'belief or speculation'"", as well as any expert testimony that is "not supported by the record." *Young*, 23 F. Supp.3d at 612 (citing O*glesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999) and *Bryte ex rel. Bryte v. Am. Household, Inc.*, 429 F. 3d 469, 477 (4th Cir. 2005)).

"An additional consideration under Rule 702 – and another aspect of relevancy – is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert* at 591 (citing *United States v. Downing*, 753 F.2d 1224, 1242 (CA3 1985)). " 'Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.'" *Daubert* at 591 (citing 3 Weinstein & Berger, ¶ 702[02], p. 702-18). Federal Rule of Evidence 401 states that: "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b)

the fact is of consequence in determining the action." "Expert testimony must be relevant to the extent that it will 'assist the trier of fact to understand the evidence or to determine a fact in issue." *Young*, 23 F. Supp.3d at 610 (quoting *Daubert,* 509 U.S. at 591*).*  When proffered expert testimony "'evidence [] has a greater potential to mislead than to enlighten [it] should be excluded."  *Young*, 23 F. Supp.3d at 611 (quoting " *Westberry v.* 178 F.3d  at 261)).

 (Attached Exhibit No.3, Deposition of Dr. Fowler, p. 158, line 4 –20)

## III.    ARGUMENT

### A. As conceded by Dr. Fowler, there is no factual basis for his conclusion that Robin Burkhart was injured when she was placed on her knees to be handcuffed.

During the course of his deposition, Dr. Fowler admitted that his conclusion that Plaintiff Burkhart had been injured when she was placed on her knees to be handcuffed was not supported by the record. Rather, it was a factual scenario that he conjured for purposes of explaining Plaintiff Burkhart's injuries in the context of the defense theory of the case. Such a proposed "expert opinion" is not admissible under Federal Rule of Evidence 702. Plaintiff accordingly requests that this component of Dr. Fowler's opinion be excluded as  inadmissible "speculation".

### B. Dr. Fowler did not undertake any effort to determine whether, and to what extent, Plaintiff Burkhart suffered from Osteoporosis and has no basis to offer such an expert opinion at the trial in this case.

Dr. Fowler's May 2015 report included his now withdrawn opinion that plaintiff Burkhart was injured as a result of being placed on her knees in conjunction with his conclusion that she suffered from  "severe " osteoporosis.  This second component of his opinion was offered without any scientific analysis.  In fact, Dr. Fowler has candidly admitted that he does not have the requisite expertise necessary to form any opinion as to whether, and to what extent, Plaintiff Burkhart suffered from osteoporosis on July 23, 2011.

The radiographic reports and medical records referenced by Dr. Fowler, as having been reviewed for purposes of his interpretive process, did not include any reference to or diagnosis of osteoporosis. (Attached Exhibit No. 3, Deposition of Dr. Fowler, p. 162, line 6 – 164, line 16). Dr. Fowler does not have the requisite experience necessary to reach an independent diagnosis of osteoporosis. He admitted the same during his deposition:

Q: In your report of September 20th, 2013, there's no reference to osteoporosis?

A: Correct.

Q: You would agree with me, sir, that at that point in time, you hadn't formed any opinion about whether or not Robin Burkhart was Osteoporotic in June of 2011?

A: I would agree.

Q: And would you also agree with me that, at that point in time, you didn't have any materials to form an opinion as to whether or not Robin Burkhart was Osteoporotic?

A: Again, I'm not sure whether I had the original CTs or X rays to look at myself. And given that I don't spend my days looking at those, **I'm not the appropriate person to make that call anyway.**

**Q: Do you know how osteoporosis is measured?**

**A: No. That's not something that I do, again, on a clinical basis. So, you know, I usually rely on radiologists to give me an indication as to the    nature of the osteoporosis.**

**Q: And when you use the term "severe," what kind of bone density does that equate to?**

**A: I really couldn't give you based on whatever scale they may or may not use.**

**Q: Do you know how radiologists calculate or measure the extent of osteoporosis?**

**A: No. It's outside my area of expertise**.

Q: Did you speak to any radiologists in this case about the extent, if any, of Mrs. Burkhart's osteoporosis in June of 2011?

A: I do not recall speaking to anybody, but I may be wrong on that. I really don't know.

(Attached Exhibit No. 3, Deposition of Dr. Fowler, p. 83, lines 13-p. 85, line 1 (emphasis

supplied)).

Dr. Fowler further conceded that he had not engaged in any forensic or scientific process

for purposes of assessing the extent of Plaintiff Burkhart's reported osteoporosis:

Q: Did you set about doing any investigation into the issue of osteoporosis?

A: No. As I said, it's not my area of expertise to make that assessment.

Q: And when did you hear from Dr. Daly? When did you either have that conversation or receive his report or get his deposition?

A: I cannot recall offhand.

Q: Can you tell me, generally, if it was 2013, 2014, or 2015?

A: It was obviously, I believe, sometime after my initial report.

Q: I gathered that, but we've got a two-year window here, basically, so, I'm trying to get a handle on when, in that two years, that may have happened?

A: I do not know.

Q: And the word "severe," where did that come from? Is that something Dr. Daly told you? Is that something Mr. Ruckle told you? Or did you come up with that on your own?

MR. RUCKLE: Objection.

Q: And I'm asking in the context of your characterization of Mrs. Burkhart's osteoporosis?

**A: I believe that information was given to me, but I cannot recall the source, whether it was directly from conversation with Dr. Daly or information provided to me by Counsel.**

Q: Did you undertake any independent efforts to – at that point in time, you had been told by either Mr. Ruckle or Dr. Daly that Robin Burkhart had severe osteoporosis. Did you undertake any efforts to double back and investigate the extent of her osteoporosis?

A: No.

Q: Did you look at any radiographic studies to see if there were measurements regarding her bone density on it?

A: No.

Q: Did you look back at any reports to see if they made mention of the extent of her osteoporosis?

A: No.

**Q: So, you're taking that either from the word of Mr. Ruckle or from Dr. Daly?**

**A: Correct.**

**Q: And you would agree with me, sir, that there's no scientific basis for that opinion that something is – that you have formed?**

**A: Not that I independently formed, correct.**

Q: And would you also agree with me that you don't know what the scientific basis of that opinion is by whomever provided it to you?

A: Correct. It's not part of my usual practice or training.

Q: I understand that. The question was a little different. It probably – it wasn't so artful. But whomever told you, whether it be Mr. Ruckle or Dr. Daly, that Robin Burkhart was severely osteoporotic, **did they ever   explain to you how they came to that conclusion?**

A: No. I do not recall that said explanation.

Q: And did they ever mention the scientific methodology that they utilized?

A: Not that I recall.

(Attached Exhibit No. 3, Deposition of Dr. Fowler, p. 96, line 2- p. 99, line 10).

Dr. Fowler could not rule out the possibility that his opinion about Plaintiff Burkhart's

osteoporosis was anything more than the adoption of a suggestion from defense counsel:

A: My recollection is the information came from Dr. Barry Daly, who is a radiologist at the University of Maryland, but I cannot recall the format as to whether it was a telephone conversation, whether I saw a report he wrote or any other means. So, I can't tell you exactly how I got that information.

Q: And I note that Dr. Daly's report is not referenced in your September 20th, 2013 report. You didn't have it at that point in time?

A: It's not listed, and I don't believe that I had access to it at that time.

Q: And I also see that it's not reference in your May 13th, 2015 report?

A: Correct.

Q: And there's no reference to a telephone conversation with Dr. Daly in either of these reports?

A: Correct.

Q: And there's also no reference to a deposition transcript from Dr. Daly in either of the reports?

A: Correct.

Q: Is it possible, sir, that this is something that Mr. Ruckle relayed to you?

A: It is possible.

(Attached Exhibit No. 3, Deposition of Dr. Fowler, p. 85, lines 14-22; p. 86, lines 1-18).

Given these circumstances, Dr. Fowler has no scientific basis to offer any opinion about the condition of Robin Burkhart's bones on July 23, 2011. In fact, he cannot properly offer an opinion that she was osteoporotic. He acknowledged that same during the course of his deposition:

> Q: Jumping ahead to your addendum, which I recall was Exhibit 4, I believe. This is the May 13th, 2015 report, okay. It begins after you say, "Further to   my report of September 20th, 2013, in light of the osteoporotic bone changes in Ms. Burkhart's knee." We have gone over this fairly at  length, but you don't know the extent of those osteoporotic changes?
>
> A: No.
>
> Q: You don't know what her bone density was?
>
> A: Correct.
>
> Q: And you don't know if she was, in fact, osteoporotic in June of 2011?
>
> A: Correct.

(Attached Exhibit No. 3, Deposition of Dr. Fowler, p. 102, lines 4-18).

Dr. Fowler has no reliable basis in knowledge or experience to offer any conclusions about osteoporosis He also lacks the capacity to offer any "pertinent evidence based on scientifically valid principles" with respect to presence of osteoporosis and/or the extent of Plaintiff Burkhart's osteoporosis. There are no grounds in this case to believe that such an opinion might be reliable. Both the factual basis of such testimony and the data, principles, methods underpinning the conclusion have been sufficiently called into to question to exclude such an opinion at trial.

Dr. Fowler also should not be permitted to offer, under the guise of expert testimony, a characterization of osteoporosis that may have been suggested to him by defense counsel. Pursuant to Federal Rule of Evidence 403, the  evidence should be excluded as its probative value is substantially outweighed by a danger of unfair prejudice, and confusing the issues. Because there a substantial potential that the jury will be mislead to believe that the conclusion is being offered as some forensic determination, Plaintiff hereby requests that the testimony be excluded at trial.

**C. Having now withdrawn his opinion that Plaintiff Burkhart was injured when she was placed on her knees, and in the absence of any ability to formulate an opinion regarding the extent of Plaintiff Burkhart's osteoporosis, Dr. Fowler cannot offer any testimony that might assist the jury in this case.**

It is the gate keeping function of this Court to exclude expert opinions that are not relevant and/or reliable. Fed. R. Evid 702(a) "goes primarily to relevance. 'Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.'" *Daubert* at 591 (citing 3 Weinstein & Berger, ¶ 702[02], p. 702-18). Fed. R. Evid. 401 states that: "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." In the instant case, Dr. Fowler does not propose to offer any testimony that might assist the jury based on his "biomechanical interpretation of the circumstances."

Dr. Fowler does not dispute the fact that Plaintiff Robin Burkhart suffered a "fracture dislocation" in which a portion of the tibial plateau "fractured" off and damaged the popliteal vessel. (Attached Exhibit No. 3, Deposition of Dr. Fowler, p. 151, line 17 – page 152, line 8). He also does not controvert the fact that the injury occurred during the course of the subject encounter:

Q: …. [T]here is no dispute in this case, as far as you are aware, as a forensic scientist, about the time frame in which Mrs. Burkhart was injured?

A: No.

Q: We agree that when she was standing up, she did not have a tibial plateau fracture, and she didn't have a ruptured popliteal artery?

A: Unlikely. Very unlikely.

Q: And we agreed that during the timeframe when she was walking about the house, meaning up the stairs to the kitchen, she wouldn't have had a posterior dislocation or a tibial plateau fracture that she wouldn't have been able to walk?

A: Correct.

Q: So, we can assume, to a reasonable degree of scientific certainty, that she was uninjured at the beginning of this process:

A: I would agree.

Q: And there's no dispute about that?

A: Correct.

Q: And we also know that she came to be injured during the course of this encounter?

A: Correct.

Q: And there's no dispute about that?

A: Not that I'm aware of.

(Attached Exhibit 3, Deposition of Dr. Fowler, p. 172, line 5 – p. 173, line 3) He cannot, however, offer any description of how the knee joint was moved to cause the injury. He conceded his inability at deposition:

Q: Why don't you do this for me then. Explain, with this anatomical model, the motion of the knee that caused this fracture, just so we're not guessing at it, and I know exactly what happened.

A: Well, if we knew that, we would be able to answer the question that everybody's asking.

Q: So, you are not able to offer an opinion as to how the knee moved in this particular case to cause this fracture?

A: Specifically, no.

(Attached Exhibit No.3, Deposition of Dr. Fowler, p. 154, lines 7-18)

As detailed above, Dr. Fowler grossly misunderstood the discovery record in this case when rendering his opinion. He also had no capacity to diagnose or measure the extent of Plaintiff Burkhart's osteoporosis. When these two facets of his opinion are excluded, Dr. Fowler cannot offer any "interpretation" regarding the circumstances which resulted in Plaintiff Burkhart's injuries. He acknowledged the same during the course of his deposition:

Q. Now that you have had occasion to look at Officer Dickel's testimony in this case and consider that in conjunction with the police report  and Robin Burkhart's testimony in this case and her medical records, you can't offer an explanation of how she came to be injured?

MR. RUCKLE: Objection.

A.  Correct.

(Attached Exhibit No.3, Deposition of Dr. Fowler, p. 130, lines 15-22). His inability to render any interpretive opinions was even reinforced by defense counsel at deposition.  The final sequence in Dr. Fowler's deposition is a repartee with Mr. Ruckle, attorney for the Defendants and the side for whom Dr. Fowler was retained:

Q.  So, would it be fair to say that we have essentially thrown out any possible explanation for this injury?

A.  Based on the statements by both parties, yes.

Q.      And that right now, we have an injury, and we have no explanation of
        the mechanism of that injury?

A.      Based on the statements made by the individuals, yes.

(Attached Exhibit No. 3, Deposition of Dr. Fowler, p. 186, line 16 - 187, line 3)

One of the reasons why Dr Fowler cannot reach any opinions relative to causation in this case is his inability to fully grasp Plaintiff Burkhart's explanation of the subject occurrence. During the course of her deposition, Plaintiff Burkhart was never asked to describe the manner in which her leg had been moved, describe the force that was applied or the speed at which it moved. (Attached Exhibit No. 3, p. 133, lines 3-8) Dr. Fowler is accordingly without any basis to offer substantive conclusions regarding her explanation:

Q.      Now, the next part of what she says is, "He begins to twist and twist and
        twist." What did you interpret Mrs. Burkhart to be talking about      when
        she said that?

A.      That, I could not really be absolutely certain. I mean, the choices      would
        be twisting at the foot or twisting so that it pivots of the hip. I      don't
        know because it was not clear.

Q.      And she was never asked that?

A.      No.

Q.      Do you know if her leg was in flexion at that point in time?

A.      I do not know.

Q.      And she was never asked that?

A.      Correct.

Q.      And do you know which portion of her leg Officer Dickel was holding
        at that point in time?

A.      I do not.

Q.      And she was never asked that either?

A.      Correct.

(Attached Exhibit No. 3, Deposition of Dr. Fowler, p. 65, line 19 – p. 66, line 16; See also Exhibit 3, Deposition of Dr. Fowler, p. 34, lines 17- 35, lines 1-20)

Dr. Fowler's inability to (1) identify the mechanism or movement causing the diagnosed injuries and (2) understand Plaintiff Burkhart's explanation of the subject happening, is compounded by his inability to offer any explanation as to the amount of force that caused the diagnosed injuries. Although he initially claimed to be able to make such an assessment, it became apparent during the course of his deposition that he could not:

> Q.   In this particular case, Robin Burkhart's case, did you form an opinion about the amount of force that led to her injury?
>
> A.   Yes.
>
> Q.   And how did you go about forming that opinion?
>
> A.   If this is a normal individual, then you would expect there to be a substantial amount of energy. And if this is an individual who has osteoporosis, then you can decrease that energy in accordance with the degree of osteoporosis.
>
> Q.   Well, let's break that down. You agree that you don't know the extent of Robin Burkhart's osteoporosis, if any, on June of 2011?
>
> A.   Correct.
>
> Q.   Would you agree with me, sir, that you are not able to render an opinion in this case about the amount of force that was applied to her leg that caused her injuries?
>
> A.   Correct. If you exclude the osteoporosis part of the equation, then I would expect it to be a substantial amount of force, as I said, typical with a fall from a height and/or substantial sporting type injury or a motor vehicle collision, which is not what is described in this situation.

(Attached Exhibit No. 3, Deposition of Dr. Fowler, p. 117, lines 20-22; p. 118, lines 1-22).

Without concept of how or to what extent force may have been applied to cause the injuries, Dr. Fowler cannot competently comment on any issue of causation. He also does not have any understanding of collateral facts that would be probative of how this event may have occurred:

> Q: Do you have any understanding of how much Officer Dickel weighs?
>
> A: No.
>
> Q: Do you have any understanding of Officer Dickel's training in martial arts?
>
> A: No.
>
> Q: Do you have any understanding if Officer Dickel was or has received specific training regarding the manipulation of limbs?
>
> A: No.
>
> Q: And you testified earlier that you don't have a basis to make a conclusion as to how Officer Dickel manipulated Robin Burkhart's limp?
>
> A: Correct.

(Attached Exhibit No. 3, Deposition of Dr. Fowler, p. 121, lines 117)

In sum, Dr. Fowler cannot offer any scientific or forensic opinion that would assist the jury in understanding what occurred in 292 Aspen Hill Road on July 23, 2011. His assumptions regarding the alleged osteoporosis and take down sequence of events have no basis in fact and no scientific basis. Every pillar of his opinions was knocked down during his deposition until he was finally left with his last avenue of retreat: "I do not know what happened and cannot therefore opine on the Plaintiff's mechanism of injury." Dr. Fowler can impart no original, scientifically or factually based testimony concerning that manner in which Plaintiff suffered her

injuries. Any opinion proffered by Dr. Fowler would only serve to muddy the waters and distract the trier of fact.

Dr. Fowler's opinion is not relevant to this case as it does not tend "to make a fact more or less probable than it would be without the evidence" and would not be "of consequence in determining the action." Fed. R. Evid. 401. He has no independent basis for his opinion and is only parroting information he received from either Mr. Ruckle or Dr. Daly without independently verifying the methodology underpinning that information. At best he is repeating Dr. Daly's opinion, at worst he is making things up. Either way, Dr. Fowler is not offering any opinion that would make a fact more or less probable in this case. He stands to offer no opinion regarding the subject occurrence and also has no ability to offer any commentary that would assist the jury in considering the subject occurrence.


III.     **CONCLUSION**

Defendant Officers Dickel and Vlach should not be permitted to present Dr. David Fowler as an expert witness in this case as his opinions are not properly offered under Federal Rule of Evidence 702 and would run afoul of Federal Rule of Evidence 401 and 403.

WHEREFORE, Plaintiff Robin Ann Burkhart respectfully requests that this Honorable Court grant an Order excluding David Fowler, M.D. as an expert witness for the defense and grant such further and additional relief as it deems to be just and appropriate.

Respectfully submitted,

_____-s-_____
Anton L. Iamele, Federal Bar No. 14845
201 North Charles Street, Suite 700
Baltimore, Maryland 21201
aiamele@iamelelaw.com
Telephone: 410-779-6160
Facsimile: 410-779-6161
*Counsel for Plaintiff Robin Ann Burkhart*

## HEARING REQUEST

Plaintiff requests that a hearing be held concerning this Motion in Limine.

_____-s-_____
Anton L. Iamele

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on this 6th day of November, 2015, a copy of the foregoing

was transmitted by way of this Court's electronic filing system and sent by first-class, postage

prepaid mail, to the following:

James S. Ruckle, Jr., Esquire
Old Courthouse, Room 219
400 Washington Avenue
Towson, Maryland 21204

_____-s-_____
Anton L. Iamele